**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN KELLY, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>FOODSCIENCE LLC D/B/A VETRISCIENCE LABORATORIES,<br><br>                  Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Brian Kelly, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his undersigned counsel, Denlea & Carton LLP and Kravit Smith LLP, state for his Complaint against FoodScience LLC d/b/a VetriScience Laboratories ("VetriScience" or "Defendant"), as follows:

1



1.      This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that VetriScience has made in connection with the sale of its GlycoFlex® Plus and GlycoFlex Stage 3 (collectively, "GlycoFlex") canine joint support supplements that purports to be "clinically proven" to treat all joint problems in dogs and, specifically, to provide "up to 41% increase in hind leg strength in just 4 weeks" (the "Clinically Proven Claim").

2.      VetriScience's bold claim to have a clinical study proving that its GlycoFlex supplement will treat all canine joint conditions in dogs and increase hind leg strength is false. VetriScience has never clinically tested its GlycoFlex supplement.  Instead, GlycoFlex has only been examined in a self-described "pilot study" in 2006 (the "2006 Pilot Study") that involved a

mere seven dogs which were subjected to an artificial, surgical and chemically induced "stable stifle OA [osteoarthritis] model,"[1] meaning the dogs were made lame as if they suffered from osteoarthritis and then administered the GlycoFlex supplement. The pilot study observed that only 3 of the 7 dogs "had a significant improvement in lameness" and an average 41% increase in hind leg strength, meaning 4 of the 7 dogs had no significant increase in hind leg strength. Thus, VetriScience's Clinically Proven Claim in its packaging and marketing materials is demonstrably false because (a) there is no clinical study, (b) VitriScience misrepresents what the small pilot study found, and (c) VetriScience actively conceals the fact that even the 2006 Pilot Study only studied GlycoFlex' effect on osteoarthritis, not all canine joint issues.

3.    To make matters worse, it is clear that VetriScience never believed its own Clinically Proven Claim. It waited approximately eight years after the 2006 Pilot Study to timidly claim in 2014 that GlycoFlex was "clinically researched." In 2018, however, VetriScience threw all caution and honesty to the wind and boldly claimed that the 2006 Pilot Study clinically proved that GlycoFlex was an effective treatment for all canine joint issues. Obviously, if VetriScience believed that claim, it would have made it soon after the 2006 Pilot Study.

4.    As the National Advertising Division of BBB National Programs (the "NAD")[2] has repeatedly stated, representations that a product's efficacy has been "clinically proven" must

---

[1]    A dog's "stifle" is equivalent to a human knee.

[2]    The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising. It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission. NAD referrals receive priority treatment from the Federal Trade Commission.

closely match the underlying evidence because they are a promise that there is scientific evidence that establishes the truth of the claim. Such a claim conveys an especially strong message to consumers.

5.      Given the size of the market for pet supplements in the United States — estimated at $1.6 billion in 2020 with an estimated annual growth rate of 8.2% by 2028 — and the hundreds of competing products, there is pneumatic pressure on those competitors to differentiate their products and convince consumers that their products can help their pets live healthy lives.

6.      By this action, Plaintiff seeks to redress VetriScience's unfair and deceptive marketing campaign built upon the misleading claims that it makes about GlycoFlex, and to obtain the financial recompense to which Plaintiff and his fellow class members are entitled.

## THE PARTIES

7.      Plaintiff Brian Kelly is an individual who resides in the Bay Ridge section of Brooklyn, New York.

8.      Defendant FoodScience LLC d/b/a VetriScience Laboratories is a Delaware limited liability company with its principal place of business in Williston, Vermont. VetriScience describes its business as follows:

## Our Mission

Our mission is to provide veterinarians, pet owners and pets with advanced support for common animal health concerns. Backed by science, and complementary to traditional therapies, our superior quality supplements feature pure, highly-researched ingredients— developed by veterinarians for pets.

## Setting The Standard

VetriScience® has been an innovator and pioneer in the animal health industry for nearly 40 years. In 1981, we launched GlycoFlex® as the first commercially available glucosamine supplement for dogs. Today, we maintain a comprehensive lineup of efficacious products and continue to push the envelope when it comes to quality, research and innovation.

In 2014, we launched the VetriScience® Pro Line featuring cutting-edge products exclusively for veterinary use.

## Developed By Veterinarians

VetriScience® Laboratories utilizes veterinarian feedback to improve and expand our line of supplements. Our products are developed through extensive research, clinical testing and collaboration with leading-edge veterinarians. We continue to underwrite university studies that exemplify the safety and efficacy of our products.

9.      Upon information and belief, VetriScience is a division of FoodScience LLC ("FoodScience"), which is owned by a large private equity firm known as "Wind Point Partners." Specifically, FoodScience's sole member is Wind Point Advisors LLC d/b/a Wind Point Partners, a Delaware limited liability company.  Upon information and belief, Wind Point Advisors LLC's sole member is Wind Point Draws, L.P., a Delaware limited partnership.  Upon information and belief, Wind Point Draws, L.P.'s sole partner is Wind Point Management Holdings, L.P.  Upon information and belief, Wind Point Management Holdings, L.P. is a Delaware limited partnership whose sole partner is Lighthouse Capital Holdings II, L.P.  Upon information and belief, Lighthouse Capital Holdings II is a Delaware limited partnership whose three limited partners are individuals who are citizens of Illinois.

10.    Defendant manufactures, markets, and sells VetriScience's GlycoFlex® Plus supplement through its own VetriScience.com website, Amazon, Chewy, Target, Healthy Pets, Petco, Walmart and hundreds of other online and brick and mortar pet stores and veterinarians.[3]

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

12.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

13.    This Court may exercise jurisdiction over VetriScience because VetriScience has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because VetriScience has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

---

[3]        https://www.vetriscience.com/ways-to-buy

## FACTUAL BACKGROUND

**I.    Due to the Premium Consumers are Willing to Pay for Products that are Backed by Science, Manufacturers Routinely Misrepresent That Their Products Have Been Scientifically Proven to be Effective**

15.    Consumers who are seeking help to treat and minimize their dogs' joint problems are particularly vulnerable targets for unscrupulous manufacturers and advertisers.  Most dog owners treat their pets as their children (or better), and dog owners are willing to pay a premium for joint support supplements that are scientifically proven to be effective.  In an overcrowded marketplace where beneficial joint health claims for dogs are ubiquitous, being able to convince the consuming public about the efficacy of such products is critical.

16.    In order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not.  That is why Courts are particularly wary of claims by manufacturers that their product has been scientifically proven to be effective when, as here, those claims are false.

17.    An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence,'" which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the

profession to yield accurate and reliable results.'"[4] As the FTC has stated, well-controlled clinical studies are the most reliable form of evidence.[5]

## II.    VetriScience's 2006 Pilot Study Does Not "Clinically Prove" Anything and Its Clinically Proven Claim is False

18.    VetriScience's marketing of GlycoFlex over the last several years[6] has prominently claimed that it is "clinically proven" to support canine joint health generally and, more specifically in some marketing, that it has been proven to increase hind leg strength by 41%.  The Clinically Proven Claim is often (but not always) accompanied by a tiny asterisk.  For example, on the GlycoFlex's packaging[7], the Clinically Proven Claim is followed by a tiny double asterisk:



---

[4].    FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[5].    FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[6]    As set forth in more detail below, the Clinically Proven Claim was first introduced in approximately 2018, twelve years after the 2006 Pilot Study was authored.

[7]    The GlycoFlex Stage 3 version of GlycoFlex does not have the clinically proven claim on its packaging but is otherwise marketed with the Clinically Proven Claim.

On the back of the packaging there is an equally miniscule double asterisk with what appears to be a citation:





That citation reads: "Washington State University Study: The effects of GlycoFlex®3 on astable stifle OA model in dogs."  A Google search of that text leads to a copy of the 2006 Pilot Study buried on the VetriScience website[8].

19.     The full title of the 2006 Pilot Study is: Martinez, S., et al.  *The Effect of Glyco-Flex® III of a Stable Stifle Osteoarthritis Model in Dogs:  A Pilot Study*. Washington State University, 2006.  The title of the study obviously admits that it is pilot study, not a clinical study, and the omission of "A Pilot Study" from its reference in the marketing of GlycoFlex is materially misleading in and of itself.  A pilot study cannot be used to claim it proves anything. As the National Institutes of Health ("NIH") has cautioned:

> We routinely see specific aims for feasibility pilot studies that propose to evaluate "preliminary efficacy" of intervention A for condition X. However, there are two primary reasons why pilot studies cannot be used for this purpose. First, at the time a pilot study is conducted, there is a limited state of knowledge about the best methods to implement the intervention in the patient population under study. Therefore, conclusions about whether the intervention "works" are premature because you don't yet know whether you implemented it correctly. Second, due to the smaller sample sizes used in pilot studies, they are not powered to answer questions about efficacy. Thus, any estimated effect size is uninterpretable—you

---

[8]     2006 Pilot Study available here:  https://info.vetriscience.com/white_papers/VSL%20120.pdf

do not know whether the "preliminary test" has returned a true result, a false positive result, or a false negative result.[9]

20.    The 2006 Pilot Study itself demonstrates its preposterously limited scope.  After artificially inducing the physical characteristics of osteoarthritis in ***eight*** dogs, only three of seven remaining in the study showed a significant increase in hind leg strength.[10]  Of those three dogs, the average improvement in hind leg strength was 41% plus or minus 10%.  No reputable researcher would claim that a positive result in only three of seven animals indicates anything about the efficacy of the treatment, much less that it proves an efficacy claim.  Even the author of the 2006 Pilot Study obliquely admits to its limited scope:

> **Clinical Relevance:**  The results of the study suggest that Glyco-Flex® III may be an effective non-pharmaceutical treatment that can reverse the clinical signs of OA in dogs.  Future studies are needed and should include larger animal numbers and pharmacokinetic analysis of Glyco-Flex® III to investigate the responder-nonresponder phenomenon.

21.    In any event, VetriScience's ubiquitous Clinically Proven Claim is patently false.  Moreover, VetriScience implicitly admits that it had no basis for making the Clinically Proven

---

[9]    https://www.nccih.nih.gov/grants/pilot-studies-common-uses-and-misuses

[10]    Sadly, one dog became so lame from the surgical and chemical inducement of osteoarthritis that it could not participate in the "study."  It is notable that VetriScience misrepresents the manner of its testing on animals, a misrepresentation which reflects its mendacity with respect to its false Clinically Proven Claim.  In the "FAQs" section of VetriScience's website, it falsely claims the following:



Q    Do you test on animals?  ∧

A    VetriScience® does participate in clinical trials to determine the efficacy of our products. These trials are voluntary, and pets that participate are enrolled by their veterinarian and pet parent. We also use our own pets to "taste test" all our supplements and make sure your pets will love them!

That was obviously untrue in connection with the 2006 Pilot Study that states that it used "purpose bred hound cross dogs" in its study that artificially induced lameness in otherwise healthy dogs.  According the Humane Society:. "The majority of dogs in laboratories are purpose-bred, meaning that they are bred with the intent of selling them to laboratories that use dogs in harmful experiments."  https://www.humanesociety.org/resources/dogs-used-research-and-testing-faq#:~:text=The%20majority%20of%20dogs%20in,use%20dogs%20in%20harmful%20experiments. And yet VetriScience has relied on the cruel 2006 Pilot Study for a decade while falsely claiming that it only studies its products (humanely) on actually sick dogs whose owners and vets voluntarily enroll.  While this action does not seek redress for the cruelty of the 2006 Pilot Study or VetriScience's misrepresentation of its animal treatment protocols, that wrongdoing reflects VetriScience's overall attitude that marketing and sales trump the truth and the humane treatment of animals.

Claim because it did not make that claim until approximately twelve years after the 2006 Pilot

Study was authored. Indeed, it did not rely on the 2006 Pilot Study until approximately 2014

when it began to timidly claim that GlycoFlex was merely "clinically researched" and that the

2006 Pilot Study concluded that GlycoFlex "may help normalize joint function in dogs with

joints affected by OA."[11] In 2018, however, VetriScience threw all caution and honesty to the

wind and, for the first time, made the Clinically Proven Claim based on the 2006 Pilot Study,

including extending the Clinically Proven Claim to all "joint support" and joint ailments

generally, not just osteoarthritis which was the sole subject of the 2006 Pilot Study. Obviously,

VetriScience knew for twelve years that it could not make the Clinically Proven Claim, but

nonetheless chose, prior to the Class Period, to mislead consumers with its Clinically Proven

Claim to sell more products.

### III.    VetriScience Falsely Marketed GlycoFlex  as a Supplement to Alleviate All Joint Problems, Not Just Osteoarthritis.

22.    The false Clinically Proven Claim is used to market GlycoFlex for all kinds of

joint problems, not just osteoarthritis. That marketing is particularly false and misleading

because the only study of GlycoFlex that VetriScience relies on, the 2006 Pilot Study, only

studied GlycoFlex's efficacy in treating artificially induced osteoarthritis. Osteoarthritis is not,

however, the only joint problems a dog can suffer from[12] and osteoarthritis is not even the most

common joint problem, which are cranial cruciate ligament issues.[13] GlycoFlex nonetheless

applies the Clinically Proven Claim to all canine joint problems.

---

[11] https://web.archive.org/web/20140729093554/http://www.vetriscience.com/index.php?l=page_view&p=glyco_flex

[12]    Merck Veterinary Manual, *Other Joint Disorders in Dogs*.  Available at https://www.merckvetmanual.com/dog-owners/bone-joint-and-muscle-disorders-of-dogs/other-joint-disorders-in-dogs

[13]    https://www.guilfordjamestownvet.com/site/blog-greensboro-vet/2021/11/15/signs-of-dog-joint-pain

23.    To begin with, the packaging of GlyoFlex touts its broad claim as "canine joint support," without qualification as to type of joint support, on the front and back of the package:





24.    In addition, on the back of the package the "PRODUCT DETAILS" purports to

describe what benefits GlycoFlex provides:

> GlycoFlex® Plus is a delicious bacon-flavored chew, recommended for dogs of
> all ages needing advanced joint support. This clinically proven formula helps
> cushion joints, promotes cartilage building and alleviates discomfort caused by
> normal daily activities.

Nowhere on the packaging does GlycoFlex indicate that it was only studied as a supplement to

treat osteoarthritis.  In fact, it is clear that VetriScience wanted to hide the fact that it was studied

for osteoarthritis only.  First, the reference on the packaging to the so-called clinical study — the

2006 Pilot Study — is in a miniscule, almost unreadable type.  Second, VetriScience

misleadingly changes the title of the 2006 Pilot Study from "The Effect of Glyco-Flex III on a

Stable Stifle Osteoarthritis Model in Dogs: A Pilot Study" to "The effects of GlycoFlex 3 on a stable stifle OA model in dogs."  That change not only hides the fact that it was a pilot study, it also conceals the object of the study by referring to "OA" instead of the word "osteoarthritis."  No dog owner is likely to even see the reference to the 2006 Pilot Study much less make the connection that GlycoFlex was studied only for osteoarthritis, particularly if the consumer's dog suffers from joint problems other than osteoarthritis.  There is no explanation for that marketing choice other than intentional obfuscation and increased sales to a broader market of dog owners.

25.    Besides GlycoFlex' misleading packaging, VetriScience has consistently marketed GlycoFlex as clinically proven to support all forms of joint issues:






# Backed by Science

VetriScience® uses well-researched ingredients in products that have beneficial levels of active ingredients. Through studies and scientific research, VetriScience® has developed many products and formulas that are clinically proven to improve pet's dental health, reduce stress, and increase hind leg strength.

**Does GlycoFlex® actually work for dogs?**

Not only do we have thousands of happy customers who love using GlycoFlex® for their dogs, GlycoFlex® Stage 3 is clinically proven to increase hind leg strength by up to 41% in just four weeks!* This formula for medium and large dogs is made with green-lipped mussel, glucosamine, MSM, and other beneficial nutrients to support hip & joint health and mobility. Hydrolyzed chicken flavor is appropriate for pets with sensitivities to protein.



## GlycoFlex® is Clinically Proven Joint Support for Pets



As many as 20% of dogs in North America over the age of one suffer from joint problems, according to a 2020 study.[1] While many pet parents may think that joint discomfort is only a concern for senior dogs and cats, joint inflammation and degeneration associated with aging can start much earlier than you may think.

Adding a quality joint support supplement to your pet's diet can not only support mobility and strength, it may help with joint discomfort associated with aging.

GlycoFlex® Plus combines glucosamine, chondroitin, green-lipped mussel, DMG, MSM, and important antioxidants to support your pet's mobility and comfort. It's an advanced joint support supplement for dogs and cats of any age.

26.     The following is a "sell sheet" available on VetriScience's website that shoppers, veterinarians and pet stores can read and distribute.  Again, the false Clinically Proven Claim is extended to all manner of joint conditions in dogs, not just osteoarthritis.  In fact, the terms

"osteoarthritis" and "arthritis" do not appear anywhere in the sell sheet despite the fact the Clinically Proven Claim is based on the 2006 Pilot Study that focused solely on the efficacy of GlycoFlex in treating osteoarthritis:



**GLYCOFLEX® ›› PLUS** Glucosamine, Chondroitin, MSM, Antioxidants, plus Perna Mussel for Medium and Large Dogs

**GlycoFlex® Plus** joint supplement for dogs provides clinically proven joint support for working dog breeds, competitive and senior dogs.

When your dog gets up more slowly to meet you at the door, you know he's not just tired. It's time for added joint support. **GlycoFlex® Plus**, an advanced joint support supplement for dogs of any age, is clinically proven to increase hind leg strength up to 41% in just four weeks.*

**GlycoFlex® Plus** is a high quality joint support product that maintains comfort and mobility for working dog breeds, competitive and senior dogs. This new formula for hip and joint care includes more active ingredients than other leading brands including glucosamine and chondroitin as well as perna and DMG for maximum absorption and effectiveness, all in a delicious bacon-flavored chew.

**About our ingredients:**

» GlycOmega™ brand *Perna canaliculus* is a green-lipped mussel from an exclusive New Zealand source. Unlike Perna extract-based products and mussel powders, which may lack important fatty acids and other bioactive components (e.g. defatted powders or extracts), the entire organism is utilized in GlycOmega™ Perna. All **GlycoFlex®** products are formulated with GlycOmega™ Perna.

» DMG is naturally produced in your pet's body. It supports physical and mental energy levels, efficient oxygen utilization in tissues, and it acts as an antioxidant to maintain joint health.

» Glucosamine has been shown to support the production of glycosaminoglycans (GAGs) within the cartilage matrix and synovial fluid. As your dog ages, there is a decrease in the production of GAGs, which can result in joint stress, thinning of synovial fluid, and the breakdown of connective tissue. Glucosamine also supports bladder and urinary tract health by supporting the integrity of the mucosal lining.

» MSM is a source of organic sulfur. It supports the structure of joints and connective tissue. Increased availability of MSM is linked to comfort and mobility, as well as the support of collagen production.

» Manganese is required for the formation of collagen, GAGs, and proteoglycans, all of which support required cartilage integrity. A lack of manganese can lead to inefficient production of GAGs within the joints.

**Antioxidants:**

» Vitamin C
» Vitamin E
» Grape Seed Extract
» Selenium
» L-glutathione

The antioxidants in our formula help support immune system response, proper detoxification function, free radical neutralization, as well as provide support for a healthy inflammatory response.

 **JOINT SUPPORT**

 **DOGS**

 **+30 POUNDS**

 **BACON FLAVOR**

**PRODUCT DETAILS:**

GlycoFlex® Plus is a delicious bacon-flavored chew, recommended for dogs of all ages needing advanced joint support. This powerful combination of ingredients helps cushion joints, promote cartilage building and alleviate discomfort caused by normal daily activities.

**DIRECTIONS FOR USE:**

Initial (4 - 6 Weeks):
| | |
|---|---|
| 31 - 60 lbs: | 2 chews daily. |
| 61 - 100 lbs: | 4 chews daily. |
| 101 lbs and over: | 5 chews daily. |

Maintenance (After initial period):
| | |
|---|---|
| 31 - 60 lbs: | 1 chew daily. |
| 61 - 100 lbs: | 2 chews daily. |
| 101 lbs and over: | 3 chews daily. |

If giving more than 1 chew daily, divide between AM and PM.

**ACTIVE INGREDIENTS PER 2 CHEWS:**

| | |
|---|---|
| Glucosamine HCl (Shrimp and Crab) | 1000 mg |
| Methylsulfonylmethane (MSM) | 1000 mg |
| *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel) | 600 mg |
| Chondroitin Sulfate (Porcine) | 400 mg |
| N,N-Dimethylglycine HCl (DMG) | 100 mg |
| Vitamin E (dl-alpha Tocopheryl Acetate) | 50 IU |
| Vitamin C (L-Ascorbyl 2 Polyphosphate) | 24 mg |
| Manganese (Mn Proteinate) | 10 mg |
| Grape Seed (*Vitis vinifera*) Extract | 5 mg |
| L-Glutathione | 2 mg |
| Selenium (Na Selenite) | 0.002 mg |

**Inactive Ingredients:** arabic gum, brewers yeast, calcium sulfate, canola oil, citric acid, citrus pectin, glycerin, maltodextrin, mixed tocopherols, natural bacon flavor, natural smoke flavor, oat flour, propionic acid, rosemary extract, rye flour, silicon dioxide, sodium alginate, soy lecithin, vegetable oil.

GlycOmega™ is a trademark of Aroma New Zealand Ltd.

*Washington State University Study: The effects of GlycoFLEX® 3 on a stable stifle OA model in dogs.

**1.800.882.9993**
**www.vetriscience.com**

0 26664 01337 8

090043J.120

 **VetriSCIENCE® Laboratories**

**Distributed by VetriScience® Laboratories**
A Division of FoodScience® Corporation
929 Harvest Lane, Williston VT 05495 USA

**IV.    Plaintiff Purchased GlycoFlex Based on the Clinically Proven Claim**

27.    Kelly purchased GlycoFlex on three or four occasions during the period of approximately 2021-2024 at the Petco store at the Industry City location in Brooklyn, New York.

28.    Prior to purchasing GlycoFlex for his pitbull with joint problems not associated with osteoarthritis, Kelly and his partner and co-owner of his dog were exposed to and relied on VetriScience's representation in its marketing that GlycoFlex was clinically proven to improve a dog's "joint problems" whatever those joint problems may be.  Specifically, Kelly reviewed and relied on VetriScience's Clinically Proven Claim on VetriScience's website and on the packaging for GlycoFlex.

29.    Kelly purchased the GlycoFlex supplement reasonably believing that it was clinically proven to generally improve joint health in dogs.

30.    GlycoFlex did not improve Kelly's dog's joint conditions and he stopped buying GlycoFlex.

31.    Had Kelly known that GlycoFlex was not clinically proven to provide joint support or that it has only been preliminarily studied for osteoarthritis, he would not have purchased it.  At the very least, Kelly would not have paid the exorbitant price premium charged for GlycoFlex that purported to be clinically proven to help with all joint issues in dogs.

32.    Kelly could have purchased an equivalent and less expensive glucosamine/chondroitin-based joint support supplement for dogs, such as Nutramax Cosequin Joint Health Supplement, at half the price of GlycoFlex and/or any number of pure Green Lipped Mussel supplements at a fraction of the cost of GlycoFlex even if combined with a much cheaper glucosamine/chondroitin-based joint support supplement.

## CLASS DEFINITION AND ALLEGATIONS

**New York Class**

33.    Plaintiff Kelly brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "New York Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) (1) GlycoFlex® Plus chews for Small Dogs in bacon, peanut butter and duck flavors; (2) ) GlycoFlex® Plus chews for Medium and Large Dogs in bacon, peanut butter and duck flavors; (3) GlycoFlex® Plus chewable tablets; (4) GlycoFlex Stage 3 chews; and (5) GlycoFlex Stage 3 chewable tablets, manufactured, marketed, distributed and/or sold by Defendant which Defendant warranted as being clinically proven to alleviate joint issues in dogs (the "Class Products.")  Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Products for resale.

34.    Plaintiff Kelly expressly disclaims any intent to seek any recovery in this action for personal injuries that his dog or any New York Class member's dog may have suffered.

35.    **Numerosity**.  This action is appropriately suited for a class action.  The members of the New York Class are so numerous that joinder of all members of that class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed New York Class contains thousands of purchasers of the Class Products who have been damaged by VetriScience's conduct as alleged herein.  The precise number of the members of the New York Class is unknown to Plaintiff but is believed to be in the thousands.

36.    **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the New York Class.  The common legal and factual questions for the New York Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant falsely marketed, and/or sold the Class Product as clinically proven joint support for dogs.

- Whether Defendant's marketing of the Class Product as clinically proven joint support for dogs was and/or is false, fraudulent, deceptive, and/or misleading.

37.    **Typicality**.  Plaintiff's claims are typical of the claims of the members of the New York Class, because, *inter alia*, all the class members have been injured through the uniform misconduct described above and were subject to VetriScience's blatant misrepresentations of material information.  Moreover, Plaintiff's claims are typical of the claims of the members of the New York Class.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the New York Class.

38.    **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the New York Class.  Plaintiff purchased a Class Product, and he were harmed by VetriScience's deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a result of VetriScience's conduct, as did all members of the New York Class who purchased the Class Products.  Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the New York Class.

39.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against VetriScience.  It would be virtually impossible for a member of the New York Class, on an individual basis, to obtain effective

redress for the wrongs done to him or her.  Further, even if the members of the New York Class could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

40.    Plaintiff seeks monetary damages, including statutory damages on behalf of himself and the New York Class.  Unless the New York Class is certified, VetriScience will be allowed to profit from its deceptive practices, while Plaintiff and the New York Class members will have suffered damages.

## COUNT I

### (Violation of New York General Business Law Section 349)

41.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 40 as if fully set forth herein.

42.    New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

43.    By falsely marketing, distributing and/or selling the Class Product to Plaintiff and the other New York Class members as clinically proven to treat all joint disorders in dogs, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Product has not been clinically proven to treat all joint disorders in dogs.

44.     In taking these actions, Defendant failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

45.     Defendant has deceptively advertised, marketed, and sold the Class Product to consumers.

46.     Defendant's conduct was consumer oriented.

47.     Defendant engaged in deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

48.     Defendant's false claim that GlycoFlex is clinically proven to treat all joint disorders in dogs was and is misleading in material respects to the consumers VetriScience targeted.

49.     Based on, among other things, Defendant's knowledge that the Class Product was not clinically proven to treat all joint disorders in dogs, Defendant knew that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

50.     Plaintiff and the New York Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the New York Class have been substantially injured by purchasing and/or overpaying for the Class Product which is not what Defendant represents it to be.

51.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law,

24

and Defendant is liable to Plaintiff and the New York Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

52.    Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the New York Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

## COUNT II

### (Violation of New York General Business Law Section 350)

53.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 52 as if fully set forth herein.

54.    Defendant's labeling, marketing, and advertising of the Class Product is "misleading in a material respect," as it falsely claims that the Class Product is to treat all joint disorders in dogs and thus is "false advertising."

55.    No rational individual would purchase the Class Product at the premium price at which it is sold if that individual knew that the Class Product was not clinically proven to treat all joint disorders in dogs, which is how Defendant markets the Class Product.

56.    Defendant's advertisements and marketing of the Class Product as clinically proven to treat all joint disorders in dogs were consumer oriented.

57.    Defendant's advertisements and marketing of the Class Product as clinically proven to treat all joint disorders in dogs were misleading in a material respect.

58.    By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the New York Class have been substantially injured by overpaying for a product that has diminished value on account of the false claim that it is clinically proven to treat all joint disorders in dogs.

59.    Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff Kelly and the members of the New York Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action as soon as practicable, with the New York Class as defined above, designating Plaintiff Brian Kelly as the named New York Class representative, and designating the undersigned as Class Counsel.

B.    On Plaintiff's Count I, awarding against Defendant the damages that Plaintiff and the other members of the New York Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.    On Plaintiff's Count II, awarding against Defendant the damages that Plaintiff and the other members of the New York Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.    On Plaintiff's Counts I and II, awarding Plaintiff and the New York Class their respective classes interest, costs, and attorneys' fees.

E.    Awarding Plaintiff and the New York Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:        September 5, 2024
              White Plains, New York

**DENLEA & CARTON LLP**
James R. Denlea
Jeffrey I. Carton
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com

-and-

**KRAVIT SMITH LLP**

By: /s/ *Philip M. Smith*
        Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.:  (646) 493-8004
Fax:  (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiff*